STATE of Minnesota, Respondent,

v.

John VANG, Defendant,

Integrity Bonding Company, Appellant.

No. A08–0425.

Court of Appeals of Minnesota.

March 31, 2009.

Lori Swanson, Attorney General, John S. Garry, Assistant Attorney General, St. Paul, MN, for respondent.

Justin L. Seurer, Seurer Law, LLC, Minneapolis, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; WORKE, Judge; and CONNOLLY, Judge.

## OPINION

HUDSON, Judge.

On appeal from the district court's reinstatement and discharge of $500 of a $10,000 bail bond, appellant argues that the district court abused its discretion by failing to hold a hearing and by failing to reinstate the entire amount of the bail bond. We affirm.

## FACTS

In October 2006, defendant John Vang was charged with third-degree possession of a controlled substance. In May 2007, appellant Integrity Bonding Company posted a bail bond in the amount of $10,000 to guarantee defendant's appearance in court. Defendant pleaded guilty to the charges in June 2007 but failed to appear for sentencing in August 2007. Pursuant to Minn. R. Gen. Pract. 702, the district court ordered the bail bond posted by appellant forfeited for defendant's failure to appear for sentencing.

On December 12, 2007, appellant petitioned the district court for a 90–day extension of the bail bond. In its supporting affidavit, appellant stated that it had contacted its recovery agent who was looking for defendant at Wisconsin addresses where defendant had been known to live. The district court granted a 60–day extension. On February 13, 2008, appellant petitioned the court for a 15–day extension, and, again, supported its request with an affidavit detailing its attempts to locate and apprehend defendant. Appellant detailed facts similar to those included in its December 12, 2007 petition, but added that a recovery agent was doing surveil-

lance on a new address in an attempt to apprehend defendant. The district court granted a 15–day extension. On February 27, 2008, appellant petitioned the district court for reinstatement and discharge of the bail bond. The supporting affidavit detailed appellant's various attempts to locate defendant, including re-interviewing defendant's parents in Wisconsin and interviewing other relatives of defendant in Wisconsin. Appellant stated that defendant's father informed the recovery agent that defendant was living in Toronto. The state opposed appellant's motion. Defendant was not apprehended, and on February 27, 2008, the district court forfeited $9,500 of the bond. This appeal follows.

## ISSUES

I. Did the district court err when it denied appellant's petition for full reinstatement and discharge of a forfeited bail bond without a hearing pursuant to Minn. R. Gen. Pract. 702(f)?

II. Did the district court abuse its discretion when it reinstated only $500 of appellant's $10,000 bail bond?

## ANALYSIS

### I

■ Appellant argues that the district court abused its discretion when it forfeited $9,500 of the bail bond without holding a hearing pursuant to Minn. R. Gen. Pract. 702(f). Despite appellant's framing of the argument, construction of a court rule presents a question of law, which this court reviews de novo. *See Stoebe v. Merastar Ins. Co.*, 554 N.W.2d 733, 735 (Minn. 1996) (examining rule of civil procedure under de novo standard).

■ Although appellant did not specifically request a hearing, appellant argues that it was automatically entitled to a hear-

ing regarding the reinstatement and discharge of the bail bond because, under Minn. R. Gen. Pract. 702(f), "[a] petition for reinstatement ... *shall be heard* and determined by the judge who ordered forfeiture, or the chief judge." (Emphasis added.) Appellant's position is unavailing for several reasons. First, we note that this provision concerns the assignment of a particular judge to the bail-reinstatement determination, not the particular procedure to be followed. Second, the comment to the rule states, "[c]ourts considering this action should give consideration to the appropriate procedure and the giving of notice and an opportunity to be heard if such process is due the bond person." Minn. R. Gen. Pract. 702(f) 1997 advisory comm. cmt. This comment indicates that the procedure for the bail-reinstatement determination, including the need for a hearing, is discretionary with the district court.

Furthermore, the supreme court established several factors that a reviewing court shall consider when determining whether the district court abused its discretion in denying a motion to reinstate a forfeited bail bond. *Shetsky v. Hennepin County (In re Shetsky)*, 239 Minn. 463, 471, 60 N.W.2d 40, 46 (1953). One of those factors is the *civil nature of the proceedings. Id.*

Assuming the proceedings are civil in nature, as *Shetsky* and rule 702(f) indicate, rule 115 of the General Rules of Practice reflects the traditional practice for a civil action by implicitly placing the burden on the moving party to obtain a hearing date. Minn. R. Gen. Pract. 115.02 reads:

A hearing date and time shall be obtained from the court administrator or a designated motion calendar deputy. A party obtaining a date and time for a hearing *on a motion* or for any other calendar setting, shall promptly give no-

tice advising all other parties who have appeared in the action so that cross motions may, insofar as possible, be heard on a single hearing date.

(Emphasis added.) Application of this rule would appear to require that appellant move for a hearing. Additionally, in *State v. Due,* which also involved the forfeiture of a bail bond, this court noted that no evidentiary hearing was requested, which implied that the appellant was not automatically entitled to a hearing. 427 N.W.2d 276, 277 (Minn.App.1988), *review denied* (Minn. Sept. 28, 1988).

Moreover, the phrase "shall be heard" does not necessarily mean that a party is entitled to an oral hearing. *See, e.g., Sweet v. Comm'r of Human Servs.,* 702 N.W.2d 314, 321 (Minn.App.2005) (holding that counselor's opportunity to submit his written case to the commissioner, along with any supporting documents, satisfied his "right to be heard"). And the Minnesota Rules of Civil Procedure do not guarantee the right to a hearing on all motions. *See* Minn. R. Civ. P. 43.05 (stating that the court "may direct that [a motion] be heard wholly or partly on oral testimony or depositions"); *see also Braith v. Fischer,* 632 N.W.2d 716, 723 (Minn.App.2001) (holding no abuse of discretion when district court declined to hear oral testimony), *review denied* (Minn. Oct. 24, 2001).

Here, we are unable to find in the record a specific request by appellant for a hearing. Appellant submitted an affidavit, but it failed to specifically indicate that a hearing was necessary. This suggests that appellant affirmatively sought a decision based solely on its written submission. Moreover, appellant puts forth no argument on appeal as to what new factual or legal information it would have presented at a hearing. On this record, the district court did not err when it reinstated and discharged a fraction of the bond without first holding a hearing.

## II

■ Appellant also argues that the district court abused its discretion by refusing to reinstate the entire amount of the bail bond. The district court's denial of a motion to reinstate, discharge, and refund forfeited bail bonds is reviewed for an abuse of discretion. *Shetsky,* 239 Minn. at 471, 60 N.W.2d at 46. A district court abuses its discretion when its ruling is based on an erroneous view of the law. *Almor Corp. v. County of Hennepin,* 566 N.W.2d 696, 701 (Minn.1997).

■ In determining whether the district court abused its discretion, this court considers: the purpose of bail; the civil nature of the proceedings and the burden of proof; as well as the cause, purpose, and length of the defendant's absence; the good faith efforts of the surety—if any—to apprehend and produce the defendant; and the prejudice—by way of delay or otherwise—to the state, in its administration of justice. *Shetsky,* 239 Minn. at 471, 60 N.W.2d at 46. More recently, in *State v. Storkamp,* the Minnesota Supreme Court reiterated the *Shetsky* principles and stated:

In releasing the accused upon the posting of a bond, a dual purpose is served: relieving the accused of imprisonment and relieving the state of the burden of detaining him pending his trial. This is accomplished by placing the accused in the "custody" of "a jailer of his own choosing," the surety, who will ensure the accused's presence at trial without in any way impairing or delaying the administration of justice or prejudicing the state in its prosecution.

656 N.W.2d 539, 541 (Minn.2003) (citations omitted).

The surety bears "the burden of proof to establish a justification for a mitigation of forfeited bail." *Shetsky*, 239 Minn. at 472, 60 N.W.2d at 46. Appellant has not met its burden. We note first that appellant's brief focused solely on "mitigating factors," by which we assume appellant means it made good faith efforts to apprehend and produce defendant. But appellant does not describe the nature of its efforts in any detail, relying instead on the conclusory statement that "[t]he [p]etition of the [a]ppellant demonstrates significant mitigating factors taken to ensure the apprehension of the [d]efendant." Similarly, appellant's statement of the facts merely echoes the earlier district court petitions and details seven different occasions when a recovery agent attempted to locate defendant. Appellant's argument on this factor is thus not compelling. And application by this court of the other *Shetsky* factors leads us to conclude that the district court did not abuse its discretion when it reinstated and discharged only $500 of the bail bond.

### Purpose of bail and civil nature of the proceedings

One purpose of a bail bond is to encourage a surety to voluntarily pay the penalty for the failure to ensure the presence of the accused without requiring the state to undergo the expense of litigation to recover the defaulted amount. *Id.*, 239 Minn. at 469, 60 N.W.2d at 45. Another is to encourage sureties to locate, arrest, and return defaulting defendants to the authorities to facilitate the timely administration of justice. *Storkamp*, 656 N.W.2d at 543. Here, appellant has not achieved or fostered any of the purposes of bail. Even though appellant believes defendant is in Toronto, appellant's belief about defendant's whereabouts does not demonstrate that appellant has in fact located defendant such that the government might be put in a position to secure his return.

### Cause, purpose, and length of the defendant's absence

Defendant's willfulness or bad faith is attributable to the surety. *Shetsky*, 239 Minn. at 471, 60 N.W.2d at 46. Under Minnesota law, even an untimely apprehension and return of defendant would not require that the forfeited bail bond be fully reinstated and discharged. *See State v. Williams*, 568 N.W.2d 885, 888 (Minn.App.1997) (holding that a surety's assistance in a defendant's untimely return to custody does not mandate forgiveness of the penalty on a forfeited bail bond), *review denied* (Minn. Nov. 18, 1997). Moreover, this is not an instance when the bond should be discharged because the state has taken action making it impossible for appellant to produce defendant. *See Due*, 427 N.W.2d at 278 (citing *State v. Liakas*, 165 Neb. 503, 510, 86 N.W.2d 373, 378 (1957) (surety exonerated on bond obligation when state surrendered prisoner to another sovereign, thus preventing surety's performance)). The state has done nothing to impede appellant's efforts to produce defendant, and appellant has put forth no evidence that defendant's absence at the scheduled appearances was anything but willful and unjustifiable. Under these circumstances, defendant's absence is attributable solely to appellant.

### Good-faith efforts of the surety to apprehend and produce defendant

Appellant states that "[t]he [p]etition of the [a]ppellant demonstrates significant mitigating factors taken to ensure the apprehension of the [d]efendant." Appellant filed three separate petitions with supporting affidavits. Each subsequent affidavit echoed an earlier affidavit and added one or two new facts to the record. In our

view, the district court acknowledged appellant's good-faith efforts to secure defendant's return by reinstating and discharging $500 of the forfeited bond. In addition, although appellant detailed the steps it took to regain custody of defendant, appellant never itemized its expenses in attempting to locate and apprehend defendant. In *Storkamp*, the bail bond company detailed the $1,200 it expended in apprehending the defendant. 656 N.W.2d at 541. The supreme court took this into account in holding that the bail bond should have been reinstated. *Id.* at 543. Here, it is difficult to tell how the district court arrived at the reinstatement and discharge figure of $500, because there are no findings of fact or conclusions of law in its order. But given that appellant never itemized its expenses, it cannot claim that its expenses were more than the $500 the district court forgave. Accordingly, the district court did not abuse its discretion in reinstating a fraction of the bail bond.

Appellant also argues that forfeiture of all but $500 of the bond would discourage bonding companies from locating and apprehending defendants in the future. This argument seems contrary to logic. If anything, potential forfeiture of a bond is a strong incentive for bonding companies to actually locate and apprehend absconding defendants.

**Prejudice to the state**

 Finally, in agreeing to act as a surety for a defendant, a bonding company assures the district court that the defendant will personally appear to answer the charges against him. *Due*, 427 N.W.2d at 278. Here, defendant remains at large, and thus, the state was prejudiced because it was prevented from imposing a sentence on defendant for a felony offense. This case is distinguishable from *Storkamp*, in which the state eventually gained custody of the defendant, yet the district court still denied reinstatement of the bond. 656 N.W.2d at 542–43. The adverse effect on the prosecution because of the defendant's unexcused absence "weigh[s] heavily against the remittance of the forfeited bond." *Id.* at 542.

Under the *Shetsky* factors, the district court did not abuse its discretion when it reinstated and discharged only $500 of the bail bond.

### DECISION

The district court did not err when it denied appellant's petition for reinstatement and discharge in full of a forfeited bail bond without a hearing because appellant failed to request a hearing. The district court did not abuse its discretion when it reinstated and discharged only $500 of the bail bond.

**Affirmed.**