*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0220**

Jeffrey Philip Dawson, petitioner,
Respondent,

vs.

Sara Rhea Taylor,
Appellant,

County of Dakota,
Intervenor.

**Filed September 15, 2014
Affirmed
Bjorkman, Judge**

Dakota County District Court
File No. 19-F2-05-004017

Daniel T. Westerman, St. Paul, Minnesota (for respondent)

Sara Rhea Taylor, Lakeville, Minnesota (pro se appellant)

Considered and decided by Bjorkman, Presiding Judge; Larkin, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant mother challenges the district court's modification of parenting time, arguing that the district court (1) erred by ordering a substantial modification without an

evidentiary hearing, (2) improperly excluded evidence, and (3) made numerous findings not supported by the record. We affirm.

## FACTS

Appellant Sara Taylor is the mother of S.D., born February 2002. Respondent Jeffrey Dawson was adjudicated the father of S.D. in early 2005. Pursuant to the parties' stipulation, the district court awarded the parties joint legal custody and mother sole physical custody, with the following parenting-time schedule:

|  | Mon | Tues | Wed | Thurs | Fri | Sat | Sun |
|---|---|---|---|---|---|---|---|
| Week 1 | Mother | Mother | Father | Mother | Father | Father | Mother |
| Week 2 | Mother | Mother | Father | Father | Mother | Mother | Mother |
| Week 3 | Mother | Mother | Father | Mother | Father | Father | Mother |
| Week 4 | Mother | Mother | Father | Father | Mother | Mother | Mother |

On May 31, 2013, mother moved to modify this schedule. She initially requested a school-year schedule in which she would have S.D. every Sunday through Thursday overnight, and father would have S.D. two weekends in a row, then mother would have her two weekends in a row. In response, father requested a year-round 5-2-2-5 schedule, in which S.D. would spend Mondays and Tuesdays with mother, Wednesdays and Thursdays with father, and the parties would alternate weekends (Friday through Sunday overnights). Mother subsequently amended her motion, requesting a school-year schedule in which she would have S.D. every Monday through Thursday overnight and father would have S.D. at his home for dinner on Wednesday evenings and overnights

2

every Friday and half of all Saturdays and Sundays, with the addition of Wednesday and every other Thursday overnights for the summer. She also suggested, as an alternative, that the parties employ the 5-2-2-5 schedule during the summers. Neither party requested an evidentiary hearing.

The district court issued a written order incorporating father's proposed 5-2-2-5 schedule. Mother moved for amended findings. The district court amended multiple findings but declined to change the parenting-time schedule. Mother appeals.

## D E C I S I O N

The district court has broad discretion in deciding parenting-time questions based on the best interests of the child and will not be reversed absent an abuse of discretion. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995). "A district court abuses [its] discretion by making findings unsupported by the evidence or improperly applying the law." *Hagen v. Schirmers*, 783 N.W.2d 212, 215 (Minn. App. 2010) (citing *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985)).

## I. The district court did not err by modifying parenting time without an evidentiary hearing.

A district court may not "restrict" parenting time unless it finds, after a hearing, that: "(1) parenting time is likely to endanger the child's physical or emotional health or impair the child's emotional development; or (2) the parent has chronically and unreasonably failed to comply with court-ordered parenting time." Minn. Stat. § 518.175, subd. 5 (2012). But a reduction of parenting time is not necessarily a restriction of parenting time. *Anderson v. Archer*, 510 N.W.2d 1, 4 (Minn. App. 1993).

Insubstantial modifications or adjustments of parenting time do not require an evidentiary hearing. *Braith v. Fischer*, 632 N.W.2d 716, 721 (Minn. App. 2001), *review denied* (Minn. Oct. 24, 2001). We review de novo whether a change in parenting time amounts to a restriction. *Dahl v. Dahl*, 765 N.W.2d 118, 123 (Minn. App. 2009). In doing so, we consider the reasons for the change and the amount of the reduction. *Id.* at 124.

The original order provided mother 64% parenting time and father 36% parenting time, with a mid-week move every Wednesday and every other Thursday. Both parties requested modification, but neither sought an evidentiary hearing or alleged either of the conditions (child endangerment or chronic noncompliance with a parenting-time order) that would justify restricting parenting time following a hearing. And while the parties did not agree on all of the reasons for modification, they both asserted that a new schedule should afford S.D. consistency and predictability. Mother sought to meet these goals by eliminating father's mid-week overnights, while father suggested an equalized schedule that provided S.D. with more regular, longer stretches of time with each parent but eliminated one of mother's weekly overnights. The district court's 5-2-2-5 parenting-time schedule promotes consistency and predictability. It reduces mother's parenting time from 64% to 50%, but it does so by shifting only one overnight per week from mother to father. And it provides both parents regular contact with S.D., with neither parent being regularly separated from S.D. for more than five days. On this record, we conclude that the reduction in mother's parenting time is not a restriction and the district court did not abuse its discretion by modifying parenting time without an evidentiary hearing.

**II.** **The district court did not abuse its discretion by excluding mediation evidence.**

We review a district court's evidentiary rulings for abuse of discretion. *Braith*, 632 N.W.2d at 721. Evidence of conduct or statements made in settlement negotiations is inadmissible to prove liability for, invalidity of, or value of a claim. Minn. R. Evid. 408. Such evidence may be admissible "for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Id.* But even evidence offered for a proper purpose may be excluded if it is cumulative. Minn. R. Evid. 403.

In support of her modification motion, mother submitted e-mails between the parties and a mediator, text messages between the parties, and her affidavit testimony that father agreed to, and later reneged on, a parenting-time schedule. The district court excluded this evidence as "related to settlement attempts by the parties with a mediator."

Mother does not challenge the exclusion of the e-mails but argues that the district court should have accepted her sworn statements and the text messages as evidence that father acknowledges he contributed to S.D.'s academic problems and evidence of the parties' "difficulties in communication." We discern no prejudicial error.

The parties presented other evidence regarding S.D.'s academic standing, including an e-mail from S.D.'s teacher to father and both parties' testimony about S.D.'s homework habits and academic progress. And the district court heard and expressly credited mother's testimony that the parties have difficulty communicating. The court addressed that concern in its order by (1) establishing a parenting schedule that requires

5

only "limited" direct communication between the parties; (2) requiring the parties to limit their communication and avoid the use of disparaging language in the presence of the child; and (3) authorizing the parties to use an online communication tool. On this record, we conclude the district court did not abuse its discretion by excluding mother's statements and the text messages because they are cumulative.

### III. The district court did not commit prejudicial clear error in its factual findings.

We defer to the district court's factual findings and will overturn them only if they are clearly erroneous. *Ludwigson v. Ludwigson*, 642 N.W.2d 441, 446 (Minn. App. 2002); *see also* Minn. R. Civ. P. 52.01 (stating that findings of fact shall not be set aside unless "clearly erroneous"). Findings are clearly erroneous when, viewing the record in the light most favorable to those findings, we are left with the "definite and firm conviction that a mistake was made." *Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000). Flawed findings warrant reversal only if the error impairs the parties' substantial rights. *See* Minn. R. Civ. P. 61 (providing that this court "must disregard any error" that "does not affect the substantial rights of the parties").

Mother argues that several of the district court's findings lack support in the record. We address each challenged finding in turn.

#### Mother's requested parenting-time schedule

Mother argues that the district court clearly erred in finding that she "initially requested" a school-year schedule in which she would have S.D. every Sunday through Thursday, and in calculating the percentage of parenting time she requested.

6

In her initial motion, mother requested "Sunday through Thursday overnights" (plus half of Friday and Saturday overnights), except for summer months when S.D. would have three Sunday overnights per month with father. As the district court generously characterized it,[1] this schedule afforded father only 21% parenting time during the school year, no mid-week contact, and sometimes resulted in periods of 18 days with no contact between father and S.D.

Mother's amended motion requested "Mon-Thur at moms during school year," with Wednesday and every other Thursday overnight with father during the summer. This schedule would afford father 29% parenting time[2] during the 40 weeks of the school year and 40% parenting time[3] for the 12 weeks of the summer, for just over 31% parenting time per year. As an alternative, mother requested the Monday through Thursday schedule during the school year and father's proposed 5-2-2-5 schedule during the summer. This schedule would give father approximately 33% parenting time per year, but would limit father to 29% parenting time during the school year. The district court clearly erred by finding that mother's amended motion proposed a schedule that would afford father only 28% parenting time per year.

However, the error does not warrant reversal. *See* Minn. R. Civ. P. 61. First, 28% is very close to father's actual school-year parenting time (29%) mother requested in her

---

[1] To arrive at the 21% figure, the district court credited father with an overnight on the three days when S.D. would be with him until only 5:00 p.m., for 9 overnights in a 42-day cycle. With only 6 overnights, father would have only 14% parenting time.

[2] Twelve overnights in a 42-day cycle.

[3] Seventeen overnights in a 42-day cycle.

amended motion.  *See Wibbens v. Wibbens*, 379 N.W.2d 225, 227 (Minn. App. 1985) (declining to remand for an actual but de minimus error in child support).  Second, and more importantly, the error does not affect the parties' substantial rights. The record amply supports the district court's ultimate finding that father's proposed 5-2-2-5 year-round schedule "would provide the consistency which [mother] is seeking" without further increasing the disparity between the parties in amount and quality of parenting time.  Accordingly, we conclude that the mathematical error in the finding regarding mother's parenting-time request does not invalidate the district court's determination that father's parenting-time request better supports S.D.'s best interests and both parents' relationships with her.

**S.D.'s difficulties in school**

Mother urged the district court to order her requested parenting-time schedule based, in part, on S.D.'s difficulties in school, which mother attributed to father being lax about S.D.'s homework.  The district court rejected this argument, citing an e-mail from S.D.'s teacher to father stating that S.D. was "not having difficulties in school" and had not exhibited a change in performance when she was with either parent.  Mother argues that the district court erred by giving more weight to the teacher's e-mail than statements from both parties that S.D. has struggled academically.

Determining the appropriate weight to give to evidence is the province of the district court; we will not reweigh the evidence.  *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).  Moreover, the district court did not affirmatively find that S.D. has not struggled academically, as mother asserts.  Rather, it found that S.D.'s "alleged academic

8

and school-related issues do not provide a basis to restrict [father]'s time with [her] so severely during the school year." The teacher's statement that S.D.'s academic performance was not affected by her time with father supports that finding, as does mother's acknowledgement that she "do[es] not blame [S.D.]'s academic problems on her dad because I know that school will be a challenge for [her] no matter what." The district court did not clearly err in finding that academic concerns do not warrant adoption of mother's proposed parenting-time schedule.

**Impact of mother's work schedule**

Mother next challenges the district court's findings about the impact of her work schedule on parenting time. The record indicates that mother previously worked night shifts during the week but her schedule changed so she needed to work only one night shift every third weekend. Essentially, mother argues it is improper to give father parenting time when she is available to parent and to assign her parenting time on weekends when there is a possibility that she will have to work. We are not persuaded. The district court acknowledged mother's new work schedule and found that it warranted a modification of parenting time. But the court found that the most important considerations are providing S.D. a consistent schedule and substantial time with both parents, which the new parenting-time schedule promotes. That finding is not clearly erroneous and supports the district court's denial of mother's request to limit father's parenting time to those times when she is unavailable.

**S.D.'s preferences**

Mother takes issue with the district court's finding that S.D.'s preferences as to parenting time are not known. In its original order, the district court found that S.D.'s "preferences . . . with respect to a modification of parenting time are not known as she did not testify." Mother did not challenge this finding, but the district court amended it to remove reference to the absence of testimony from S.D. The amended finding is supported by the record; apart from the parties' numerous statements about S.D.'s preferences,[4] there is no direct, reliable evidence of them.

**Agreement that modification is warranted**

Mother argues that the district court improperly relied on the parties' agreement that modification is warranted because they did not agree as to how parenting-time should be modified, as required under Minn. Stat. § 518.1705, subd. 9 (2012). We disagree. The district court did not construe the parties' agreement as to the need for a modification as an agreement to modify their 2005 parenting plan or otherwise apply Minn. Stat. § 518.1705 (2012). Rather, the district court cited the parties' agreement as part of the reason why an evidentiary hearing was unnecessary under Minn. Stat. § 518.175, subd. 5. As we discussed above, that determination was well within its discretion.

---

[4] For example, mother's affidavit states "[S.D.] has expressed to me that she would prefer to be at mom's on school nights and spend more time at dad's in the summer."

**The parties' relationship with and history of caring for S.D.**

Mother asserts that the evidence does not support the district courts' findings that both parties have played an active role in caring for S.D., have spent substantial time with her, and have a close relationship with her. Not only did mother fail to challenge these findings in her request for amended findings, but she endorsed a finding that "[b]oth parties have a close relationship to the minor child." And both parties' affidavits discuss their relationship with S.D. The district court's findings are not clearly erroneous.

**Parental mental or physical health issues**

Mother next takes aim at the district court's finding that neither parent has mental or physical health issues, asserting that father has particular issues "that have been investigated." She did not challenge this finding in her motion for amended findings. Nor would such a challenge have been particularly fruitful, since the district court's finding is tantamount to an accurate finding that there is no evidence that either parent has mental or physical health issues. And because neither party claimed health issues as a basis for modifying parenting time, the finding could be omitted without impairing the district court's decision. *See* Minn. R. Civ. P. 61.

**Harassment restraining order**

Finally, mother challenges the district court's finding that a harassment restraining order (HRO) she obtained against father was based on conflict between the parties related to mother's attempts to change the parenting-time schedule to accommodate her work schedule. She asserts that the HRO was principally based on father's history of verbally abusing her. But the HRO expired before the order that is the subject of this appeal, and

11

mother has never pointed to father's alleged behavior to reduce his parenting time. If anything, the district court agreed with mother that the HRO reflects communication difficulties between the parties, which it addressed in its order.

**Affirmed.**