*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1899**

State of Minnesota,
Respondent,

vs.

Marquis Deonte Gardner,
Defendant,

Midwest Bonding, LLC,
Appellant.

**Filed April 22, 2024**
**Affirmed**
**Worke, Judge**

Hennepin County District Court
File No. 27-CR-21-18316

Mary F. Moriarty, Hennepin County Attorney, Adam Petras, Assistant County Attorney,
Minneapolis, Minnesota (for respondent)

James McGeeney, Doda & McGeeney, P.A., Rochester, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Frisch, Judge; and Halbrooks,

Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**WORKE**, Judge

Appellant argues that the district court abused its discretion by denying its petition to reinstate and discharge an unconditional bail bond. We affirm.

## FACTS

On October 1, 2021, respondent State of Minnesota charged defendant Marquis Deonte Gardner with being an ineligible person in possession of a firearm. The district court set Gardner's conditional-release bond at $30,000 and his unconditional-release bond at $60,000. On October 4, 2021, Gardner posted a $30,000 bond using appellant Midwest Bonding, LLC. Gardner was released the next day. On October 21, 2021, Gardner posted another $30,000 bond using Midwest Bonding.

In December 2021, a conditional-release-violation report was filed. It alleged that Gardner failed to maintain contact with probation and included information that Gardner was involved in a shooting. The district court ordered the issuance of a bench warrant.

On March 20, 2023, Gardner failed to appear for trial. The district court filed two orders forfeiting the $30,000 bonds because the bonds were posted on the condition that Gardner make all court appearances.

On March 23, 2023, Gardner was apprehended. He was charged with second-degree murder and attempted second-degree murder for an offense that occurred on February 21, 2023. Gardner again posted bond using Midwest Bonding—$800,000 for the new charges and $100,000 for the prohibited-person case.

In May 2023, Midwest Bonding filed a petition to reinstate and discharge the bonds. In an attached affidavit, Midwest Bonding attested that it had initiated contact with Gardner on March 16, 2023, to ensure Gardner's appearance for trial, and Gardner "accepted notification of the hearing date through an automated appointment reminder voice messaging system." Midwest Bonding further stated that on March 22, 2023, after receiving notice of the bond forfeiture, it began efforts to locate Gardner. When efforts were unsuccessful, Midwest Bonding hired a professional fugitive recovery agency to locate and apprehend Gardner. During the agency's investigation, it was revealed that Gardner was in custody, having been arrested by the Minnesota State Patrol on March 23, 2023, just three days after he failed to appear.

The state opposed Midwest Bonding's petition to reinstate and discharge the bonds. The district court denied Midwest Bonding's petition. The district court concluded that the *Shetsky* factors did not support a finding consistent with reinstatement and discharge of the bonds. *See Shetsky v. Hennepin County (In re Shetsky)*, 60 N.W.2d 40 (Minn. 1953). This appeal followed.

## DECISION

Midwest Bonding argues that the district court abused its discretion by denying its petition to reinstate and discharge the bonds. *See State v. Askland*, 784 N.W.2d 60, 62 (Minn. 2010) (stating that appellate courts review district court's denial of petition for reinstatement of forfeited bond for abuse of discretion). "A district court abuses its discretion when it bases its conclusions on an erroneous view of the law." *Id.*

When determining whether to reinstate a bond, a district court should consider four factors, known as the *Shetsky* factors:

> (1) the purpose of bail, the civil nature of the proceedings, and the cause, purpose and length of a defendant's absence; (2) the good faith of the bond company as measured by the fault or willfulness of the defendant; (3) the good-faith efforts of the bond company to apprehend and produce the defendant; and (4) any prejudice to the [s]tate in its administration of justice.

*Id.* As the petitioning party, Midwest Bonding carried the burden of establishing that the first, second, and third factors favor reinstatement. *See id.* The state bore the burden of showing prejudice. *Id.* Midwest Bonding argues that, in denying its petition, the district court failed to fully consider the *Shetsky* factors. We address each.

**Purpose of bail and length of defendant's absence**

The first factor addresses the purpose of bail. The main purposes served by bonds are to relieve the defendant of pretrial imprisonment, to relieve the state of the burden of detaining the defendant, and to encourage a surety to ensure a defendant's presence at trial without delaying the administration of justice. *State v. Storkamp*, 656 N.W.2d 539, 541 (Minn. 2003).

The district court determined that the purpose of a bond is to ensure court appearances and that the defendant remains law-abiding, neither of which occurred here. Midwest Bonding argues that this factor favors reinstatement because Gardner was arrested just three days after he failed to appear for trial. But Gardner failed to maintain contact in December. And Gardner also allegedly committed another offense—murder—while on release. While three days is not a lengthy absence, the district court properly determined

4

that Midwest Bonding failed to show that this factor favored reinstatement and discharge of the bonds under these circumstances.

***Good faith of bond company measured by fault of defendant***

The next factor considers the good faith of the bond company measured by the fault or willfulness of the defendant. When the defendant "willfully does not meet the conditions of his . . . bond without a justifiable excuse, this misconduct is attributable to the surety." *Id.* at 542. The district court determined that Gardner's conduct was attributable to Midwest Bonding because he willfully failed to meet the conditions of his bond—he failed to appear, and he allegedly committed another offense while on bond.

The fact that Gardner was arrested three days after he failed to appear for trial does not alleviate his willfulness in failing to appear. Midwest Bonding provided no justifiable excuse for Gardner's failure to appear. And but for this arrest after allegedly committing a murder, it is unknown how long Gardner would have avoided his required appearance. The district court properly determined that Midwest Bonding failed to show that this factor favored reinstatement and discharge of the bonds.

***Good-faith efforts of bond company to apprehend and produce defendant***

The third factor considers the good-faith efforts of the bond company to apprehend and produce the defendant. *Id.* Here, the district court questioned Midwest Bonding's efforts to locate Gardner when he failed to appear. The district court also noted that Midwest Bonding's petition used boilerplate language that lacked specificity and substance.

Midwest Bonding argues that it did not have much time to exert efforts to apprehend Gardner because he was arrested just three days after his failed appearance. But Midwest Bonding had no hand in apprehending and producing Gardner. Despite the short period of time in which Midwest Bonding had to act, Gardner's history of failing to maintain contact, and Midwest Bonding's knowledge that Gardner had failed to maintain contact in December, there was reason to believe that ensuring Gardner's presence might be difficult. Midwest Bonding could have, therefore, been more preemptive in doing so. The district court properly determined that Midwest Bonding failed to show that this factor favored reinstatement and discharge of the bonds.

**Prejudice to state**

The fourth factor addresses the prejudice to the state in administering justice. This factor considers the prejudice to the state in prosecuting the defendant. *Askland*, 784 N.W.2d at 63. "[R]elief from forfeiture will not be granted whe[n] the prosecution has been deprived of proof by delay or has otherwise been adversely affected." *Shetsky*, 60 N.W.2d at 45.

Here, Gardner failed to appear for trial. The state asserted that it was prepared for trial. In its memorandum opposing the petition, the state explained that it "dedicated time and resources in preparing for trial by subpoenaing witnesses, organizing exhibits, meeting with witnesses, etc." The district court determined that the state was prepared for trial on the day that Gardner failed to appear and was thereby prejudiced. Dedicating time in preparation for a trial that is then delayed adversely affects the state. The district court

properly determined that the state showed prejudice. The district court did not abuse its discretion by denying Midwest Bonding's petition to reinstate and discharge the bonds.

**Affirmed.**